UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| JO ANN LAHAYE | CIVIL ACTION NO. 09-566 |
| VERSUS | JUDGE MELANCON |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE HANNA |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

*Background and the Commissioner's Findings*

Jo Ann Lahaye filed applications for disability insurance benefits and supplemental security income on June 2, 2004, alleging a disability onset date of December 19, 2003. (R 65). In her application, Lahaye alleged she was disabled due to fibromyalgia, chronic fatigue syndrome, restless legs, narcolepsy, and an enlarged liver. (R 109). Lahaye was born on December 23, 1958, and was 49 years old on the date of the hearing before the ALJ on April 17, 2008. (R 65, 547). She had a college education. (R116). The ALJ found she had past relevant work as a registered nurse. (R 31).

Lahaye testified at the hearing before the ALJ on April 17, 2008, as did Wendy Klamm, vocational expert. (R 547). This was the third hearing before an ALJ, as the

matter had been remanded from the Appeals Council twice.  (R431, 448).  The same ALJ, Lawrence T. Ragona, issued the first two decisions.  (R 300, 438).  After the second remand, the appeals council assigned another ALJ to hear the matter. (R 449).  The appeals council ordered the ALJ on remand to, *inter alia,* evaluate Lahaye's fibromyalgia in accordance with Social Security Ruling 99-2p; evaluate the effects of Lahaye's sleep apnea; obtain updated medical records as appropriate, and consider the requirements of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) in determining whether Lahaye had severe impairments or combination of impairments; evaluate Lahaye's subjective complaints in accordance with the regulations 20 CFR 404.1529 and 416.929, and ruling 96-7p; and, reevalute her residual functional capacity and obtain evidence from a vocational expert.

    On remand from the appeals council, ALJ Neil White found Lahaye had not engaged in substantial gainful employment since the alleged onset date of onset, December 19, 2003.  (R 17).  At the second step, the ALJ found she had severe impairments of fibromyalgia; degenerative changes of the cervical and lumbar spines; restless leg syndrome; obstructive sleep apnea; and obesity.  (R 17).  At the third step, the ALJ found claimant's impairments did not meet or equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, specifically Listing 1.04. (R 29).  The ALJ then assessed her  residual functional capacity and found she had the capacity to perform the full range of sedentary work. (R 29).  At the fourth step, the ALJ found she could not

perform her past relevant work as a registered nurse. (R 30). At the fifth step, with the assistance of vocational expert testimony, the ALJ found Lahaye could perform the representative occupation of quality assurance nurse. (R 32). As a result, the ALJ determined Lahaye had not been under any disability, as defined in the Social Security Act, from December 19, 2003, through the date of Decision on May 31, 2008. (R 32, 33). The appeals council denied review on February 4, 2009. (R 8). This appeal followed.

*Assignment of Errors*

A review of claimant's brief appears to show the following errors are alleged:

I.   The ALJ erred in failing to find claimant suffered from the severe impairments of narcolepsy and depression;

II.  The ALJ erred in failing to take the side effects of her medication into consideration;

III. The ALJ erred in giving controlling weight to the opinions of Dr. Foti, a consultative examiner, instead of her treating physicians;

IV.  The ALJ erroneously discounted the claimant's credibility regarding her complaints of pain;

V.   The ALJ's residual functional capacity assessment is not supported by substantial evidence.

*Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992);

3

Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

Under the first four steps of the sequential analysis,[1] the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The

---

[1] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

## *Discussion*

I.  Did the ALJ err in failing to find claimant suffered from the severe impairments of narcolepsy and depression?

The ALJ performed an exhaustive study of claimant's alleged depression, and found it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R 28). The ALJ used the correct standard under Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985) as ordered by the appeals council, and the record supports his finding. A Psychiatric Review Technique form completed by Dr. Joseph Kahler, PhD in 2004 resulted in a finding that her alleged

depression was not severe. (R 215). In her 2007 examination by Dr. Foti, he reported the following:

> PSYCHIATRIC: Denies mood changes, depression, suicidal ideation, nervousness, anxiety, difficulty concentration, + difficulty sleeping at night.

(R 465).

While Lahaye may well suffer from the medically determinable impairment of depression, the ALJ's finding that her depression was not a severe impairment at the second step of the analysis was reached by application of the correct legal standards and is supported by substantial evidence of record.

Moreover, while the ALJ did not specifically cite "narcolepsy" as a severe impairment, he recognized that Lahaye had a sleep disorder and found she suffered from the severe impairment of sleep apnea. The ALJ stated as follows:

> Her fibromyalgia, chronic fatigue syndrome, sleep disorder (be it narcolepsy or obstructive sleep apnea) and obesity have been considered according to Social Security Rulings 99-2p and 02-1p. She has actually lost weight from 153 pounds in May 2007 to 143.5 in April 2008. The fibromyalgia has not caused any type of loss of use of any joint. While she may suffer chronic fatigue, she continues to attend to the chores discussed above. She told Dr. Foti that the medication she takes for narcolepsy - L-Arginine – allowed her to function during the day. (R29).

The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). The undersigned finds the ALJ accounted for Lahaye's narcolepsy in his recognition of sleep apnea as a severe impairment. Even if the ALJ

6

should have recognized narcolepsy as a separate and severe impairment, the undersigned finds that error was harmless, as the ALJ considered the effects of a sleep disorder, whether narcolepsy or sleep apnea, throughout the sequential analysis finding it was controlled and she could function during the day.

Therefore, the undersigned finds the ALJ did not commit any error in failing to include claimant's depression and narcolepsy as severe impairments at the second step of the sequential analysis.

II.   Did the ALJ err in failing to take the side effects of her medication into consideration?

The claimant is not specific in her argument as to which side effects of which medications the ALJ failed to take into effect.  However, the testimony of claimant shows she complained primarily of fatigue and "absentmindedness" from the side effects of the medications for fibromyalgia.  (R 557, 561, 562).   In the Decision the ALJ did not expressly examine these complaints by using the words "side-effects," but did expressly consider Lahaye's allegations of fatigue and absentmindedness, finding she had only mild limitations in "concentration, persistence or pace," and noting she had not complained to examining physician Dr. Foti of any difficulty in concentrating.  (R 28).  While the ALJ discounted the severity of her fatigue, he did address same, and noted "she is prone to falling asleep if she sits to watch a movie or television."  (R 28).

Thus, the undersigned finds the ALJ did in fact consider the alleged side-effects of Lahaye's medications, although he found her testimony of their severity not credible,

which was within his discretion. Therefore, this assignment of error is without merit.

III.    Did the ALJ err in giving controlling weight to the opinions of Dr. Foti, a consultative examiner, instead of her treating physicians?

Claimant argues the ALJ erroneously relied on Dr. Foti's opinions concerning her diagnosis and functional limitations and ignored the opinions of her treating physicians. However, claimant does not point to any direct conflict between Dr. Foti's opinions regarding her diagnoses, and the undersigned can find no treating physician opinions regarding claimant's functional limitations that are in conflict with Dr. Foti's opinions regarding same with the exception of Dr. Alemany's June 19, 1994 opinion that Lahaye cannot work at all due to autoimmune hepatitis. (R 116).

As an initial matter, the ALJ, and not Lahaye's treating physician, is charged with determining her ability to work. Although the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

As discussed by the ALJ, by April 2006, Dr. Lazaro, her treating rheumatologist, stated the purported autoimmune disease seemed to have resolved completely after a course of prednisone. (R 21). The ALJ further cited Dr. Lazaro's treatment and opinions as follows:

8

> In terms of the claimant's alleged inability to work, she sees Dr. Lazaro on a six month basis. He has never stated that she could not work. He has encouraged her to exercise. His notes do not mention any restriction on her ability to work. (R 31).

Where there are apparent conflicts in the record between or among medical sources, "the Commissioner, rather than the Courts, must resolve conflicts in the evidence." Martinez, 64 F.3d at 174. Thus, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Martinez, 64 F.3d at 176, citing Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir.1987)(citation omitted).

In this case, the undersigned has not been pointed to any conflicts in the record between or among sources, other than discussed above. The ALJ was well within his discretion to adopt Dr. Foti's 2007 findings regarding Lahaye's functional capacities, which were also supported by a Physical Residual Functional Capacity Assessment performed in 2004. (R 469, 207). Therefore, the undersigned finds no error in the ALJ's use of Dr. Foti's evaluation of claimant's impairments and assessment of her functional capacities.

IV.    Did the ALJ erroneously discount the claimant's credibility regarding her complaints of pain?

The law of the Fifth Circuit is that pain reaches the level of a disabling complaint when such pain is constant, unremitting, and wholly unresponsive to therapeutic treatment. Francois v. Commissioner of Social Sec., 2001 WL 322194, *11 (E.D. La. 2001), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). In determining whether

9

a claimant's pain is disabling, the first consideration is whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to produce the pain alleged. Francois, 2001 WL 322194, at *11. Generally, medical factors that indicate disabling pain include limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling, and muscle spasm. Id. Other "medical signs" that support a finding that a claimant is disabled include a physician's diagnosis based upon history, symptoms and response to medication. When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is to evaluate the claimant's credibility. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

The ALJ considered Lahaye's complaints of pain and found that while her underlying medical impairments could be expected to cause some pain, the pain was controlled with the use of medications. (R 31). The ALJ noted the medical records showed she had no muscle weakness or atrophy; the full range of motion of all of her extremity joints and her back; and noted Dr. Foti's examination only showed positive trigger points. (R 31). After citing the state medical consultant's finding that Lahaye could perform light work, the ALJ specifically noted he assigned a residual functional capacity of sedentary "essentially based on complaints of pain because the objective evidence implies she could do light work." (R 31).

"How much pain is disabling is a question for the ALJ since the ALJ has primary

10

responsibility for resolving conflicts in the evidence."  Carrier, 944 F.2d at 246.  This court may not reweigh the evidence.  Id., citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir.1990).  The undersigned finds the ALJ considered and weighed Lahaye's complaints of pain and found them partially credible, which finding is reflected in his assignment of a sedentary instead of a light residual functional capacity.  Therefore, the undersigned finds this assignment of error is without merit.

V.     Was the ALJ's residual functional capacity assessment supported by substantial evidence?

As explained above, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Johnson, 864 F.2d at 343.

The ALJ reviewed the medical records of Lahaye with great care and in great detail - his summary of the medical records comprises over 11 pages of his Decision.  Claimant has not pointed to any particular erroneous evidentiary choices or medical findings, other than those contained in the errors previously asserted.  A review of the medical records

contained in the administrative record shows the ALJ thoroughly reviewed those records in his Decision, and those records support the findings of the ALJ.   Therefore, the undersigned finds the ALJ's residual functional capacity assessment is supported by substantial evidence of record and this asserted error is also without merit.

*Conclusion and Recommendation*

The undersigned finds the ALJ's Decision was reached by the application of proper legal standards and is supported by substantial evidence of record.  Therefore, for the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual**

**findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed in Lafayette, Louisiana, this 26th day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)